UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRIARCH PARTNERS XV, LLC and OCTALUNA LLC,

Plaintiffs,

v.

U.S. BANK NATIONAL ASSOCIATION and MBIA INSURANCE CORPORATION,

Defendants.

No. 1:16-cv-07128-JSR

**PLAINTIFFS' POST-TRIAL REBUTTAL BRIEF IN FURTHER SUPPORT OF THEIR APPLICATION BY ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000

*Attorneys for Plaintiffs*

Dated: October 17, 2016

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................... 1

I. SELLING UNDEFINED "OTHER COLLATERAL" IS NOT REASONABLE............. 2

II. THE RUSHED TIMING REMAINS COMMERCIALLY UNREASONABLE.............. 5

# TABLE OF AUTHORITIES

Page(s)

## Cases

*MBIA Ins. Corp. v. Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.*,
2011 WL 1197634 (S.D.N.Y. Mar. 25, 2011) ....................5

*In re Frazier*,
93 B.R. 366 (Bankr. M.D. Tenn. 1988) ....................6

*Robinson v Concentra Health Servs., Inc.*,
781 F.3d 42 (2d Cir. 2015)....................8

*Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*,
842 F. Supp. 2d 502 (S.D.N.Y. 2012)....................5

*Wheeler v. Citizens Telecoms. Co. of N.Y.*,
18 A.D.3d 1002 (3rd Dep't 2005)....................8

**PRELIMINARY STATEMENT**

In their post-hearing brief, Defendants act as if the October 10 hearing never happened. They largely ignore repeated admissions by their own witnesses that MBIA gave, and the Trustee and Duff & Phelps accepted, directives to conduct a sham auction process designed to deliver this valuable, highly complex Collateral (and more) to MBIA, at Plaintiffs' irreparable expense, Noteholders whose rights would be extinguished if this dirty deal went forward. And the changes to that auction process Defendants have reluctantly now been forced to make, in the wake of a TRO blocking the auction, have not addressed the core problem here: MBIA is hell-bent on (i) rushing through a sale within 21 days and (ii) including in this sale "other assets" of supposedly "uncertain" status that, on the face of this Indenture, are not "Collateral" of the Fund. Defendants' jointly-submitted brief (underscoring the Trustee's lack of independence) mostly rehashes legal arguments already debunked. But Defendants cannot obscure the evidence that the Proposed Sale process—even as modified—is structured in a commercially unreasonable fashion that serves the interests of one party and one party alone: MBIA. Both the timing and the invitation to sell unspecified "Other Collateral" are improper and contrary to the mandates of the UCC, common-law fiduciary principles, and Defendants' contractual obligations.

The fact that MBIA steamrolled over a faithless Trustee, supposedly taking "advice" from a feckless liquidation agent (Duff & Phelps) selected by and reporting, in the first instance, to MBIA, is no justification for Defendants' actions. Indeed, it is what renders them so plainly unlawful. Disregarding the testimony of their own witnesses, Defendants now seek to avoid liability by arguing that MBIA was entitled to direct the time, place and manner of the Sale, however it saw fit. But even Defendants' own witnesses acknowledged that MBIA had no right to do what it, in fact, did to dictate its preferred terms: the Trustee's Scott DeRoss testified that the timing was *not* "something that could be dictated by MBIA" (Tr. 209:14-21), and

Defendants' expert, Robert Major, testified that he "would hope" that a liquidation agent, if instructed by a controlling party to conduct the sale in an "inappropriate . . . manner," would "not do it that way." (Tr. 313:13-314:5.) Even MBIA's Anthony McKiernan conceded he was "not sure [he] could give a directive" to Duff & Phelps. (Tr. 83:18-25.)[1]

Incredibly, Defendants continue to try to hide behind the Trustee's supposed reliance on an utterly unqualified liquidation agent, Duff & Phelps, even though its representative imploded on cross-examination. Under the thumb of MBIA, which "directed" Duff & Phelps's retention and guaranteed the firm at least $1 million even if it did nothing but watch the assets get handed to MBIA on its credit bid alone (Tr. 281:14-25), Duff & Phelps's James Finkel admitted he and his firm had never done a CLO liquidation before, and he abandoned his initial position that a proper bid process would require at least 30 days. (Tr. 95:12-18; *see also* PX 55; PX 28.) With respect to the proposed "all or none" bid structure, first, Mr. Finkel was against it, then he was for it, and now, he has no preference. (PX 28; *see also* Finkel Decl. Dkt. No. 36, ¶ 63-71; Tr. 263:2-265:20; Tr. 269:6-24.) Hence, Defendants cannot seriously contend any longer that the involvement of MBIA's marionette, Duff & Phelps, in any way legitimizes their blatant misconduct. The fix was in on this Proposed Sale from the outset. And the fix will still be in unless this Court intervenes by entering the equitable relief requested here.

## I. SELLING UNDEFINED "OTHER COLLATERAL" IS NOT REASONABLE

Defendants' brief pretends that the inclusion of the "catch-all" Item 133 in their modified Proposed Sale terms (which replaces the "Other Collateral" provision of their original proposal) is nothing more than a garden variety commercial term used in the ordinary course to "ensure

[1] Elsewhere in their testimony, McKiernan and DeRoss contradicted this claim. McKiernan admitted that MBIA "directed that the trustee use Duff & Phelps." (Tr. 231:5-13.) DeRoss admitted that "[t]he all or nothing provision was dictated by MBIA" (Tr. 222:17-18) and that MBIA "dictated the other collateral provision." (Tr. 222:17-18; 225:18-21.)

that the contractually permitted liquidation of all Collateral is accomplished." Def. Br. at 6-7. In reality, however, the inclusion of "Other Collateral," which is not found anywhere in the Indenture, is designed both to chill bidding and to advance MBIA's desire to secure for itself equity in the portfolio companies that is *not* Collateral. The Trustee's new-found concern about being stuck with unfunded "hooves and tails" is pure pretext; the contemporaneous documents reflect no such concern, the Trustee proposed a "substantially final" list of Collateral that did not address it (PX 43), and that "catch-all" term was later added by MBIA, not the Trustee.

There is no "uncertainty" here about the equity in the portfolio companies.[2] The plain language of the Indenture, which was drafted by highly sophisticated parties represented by counsel, including MBIA (Tr. 116:11-14), precludes the Fund from holding "any collateral that attaches to it any liability." (Tr. 36:7-11; PX 1 §7.8(a)(i), (iv).)[3] Because the equity in the portfolio companies has tax "liability" that "attaches to it," it is not and cannot be "Collateral" of the Fund. (Tr. 36:7-15.) Instead, the portfolio company equity is "held and owned by the Octalunas, paid for by [Ms. Tilton], taxes paid for by [Ms. Tilton] which upside equity interest were gifted [by Ms. Tilton] to the Zohar Funds to run through the waterfall to pay the noteholders" in full "before the equity would be paid" to her and the Octalunas. (Tr. 42:17-24; Tr. 34:22-35:12.) In other words, the equity upside interest is "for the benefit of the funds," is not transferable from the Zohar Funds, cannot be sold, and cannot be taken "in any other way than cash upon a change of control that pays the noteholders before it pays the equity." (Tr.

[2] Defendants erroneously claim that it is Plaintiffs who are "concern[ed] that there may be uncertainty regarding the specific rights and interests to be sold in Item 133." Def. Br. at 6. Plaintiffs make no such argument: MBIA directed the inclusion of "Other Collateral" as a "catch all," on the basis of *its* alleged "uncertainty about what assets the Issuer may actual own." (PX 43; Tr. 101:25-102:13; 22:18-21.)

[3] *See also* PX 1 §12.1 (detailing the "Eligibility Criteria" to acquire Collateral Debt Obligations and Equity Securities, including that "such Collateral Debt Obligation is not (A) an Equity Security (other than an attached Equity Kicker or an Equity Workout Security)," which are narrowly defined terms of art in other sections of the Indenture. (*Id.* at 27-28.).)

55:22-56:2.) Ms. Tilton generously chose to gift upside interests in the portfolio companies to permit Noteholders to be paid in full before she received the equity. (Tr. 76:10-12.) But such a gift does not and cannot convert portfolio company equity into "Collateral," when such equity is nowhere mentioned in the Indenture's definition of "Collateral" and cannot be included in "Collateral" under the Indenture's other plain terms.

Defendants are therefore forced to proffer a contrived interpretation of the Indenture: that "Other Collateral" in the Invitation to Bid simply "mirrors the term 'Collateral'" in the Indenture. This is wrong. The "Other Collateral" language Defendants proffer expressly refers to "Equity Securities" (in a transparent attempt by MBIA to steal the portfolio company equity), whereas the term "Collateral" in the Indenture makes no mention of such equity assets.[4]

Defendants also argue, alternatively, that the definition of "Collateral" in the Indenture, incorporating the Granting Clauses, is "extraordinarily broad such that it includes any property of any nature *owned by Zohar I*." Def. Br. at 10 (emphasis added). As previously explained, however, Zohar I does not own portfolio company equity because Sections 7.8(a)(i), (iv) and 12.1 preclude the Fund from holding such equity with its accompanying liabilities. In what has apparently now become its modus operandi, MBIA has tried this "asset grab" gambit before—and failed. In *MBIA Ins. Corp. v. Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A.*, Judge Sullivan rejected MBIA's attempt to expand the definition of collateral to include "Reference Obligations," because "under the terms of the Indenture, [the Issuer] cannot grant any interest in Reference Obligations it does not own." 2011 WL 1197634, at *9 (S.D.N.Y. Mar. 25, 2011). This Court should now do the same in the face of this Indenture's clear and unambiguous terms.

---

[4] "Other Collateral" also purports to encompass "commercial tort claims," notwithstanding that Section 5.8 of the Indenture says that "no Holder of any Note shall have any right to institute any Proceedings, judicial or otherwise, with respect to this Indenture" without the express permission of the Trustee. (PX 1 §5.8.)

In short, MBIA's proffered interpretation of the Indenture would require the Court to consider parol evidence (adding something new to "Collateral"), even though there is no ambiguity in the agreement. That violates New York law. *See Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 503 (S.D.N.Y. 2012). It would amount to letting MBIA steal billions of dollars to which it never had any right. (*See* Tr. 42:25-43:3 (the value of the portfolio company equity as a whole "well exceeds" $2 billion).)[5]

## II. THE RUSHED TIMING REMAINS COMMERCIALLY UNREASONABLE

Defendants continued insistence on a 21-day auction period commencing the moment the TRO in this case is lifted is still commercially unreasonable. At trial, both the Trustee and Duff representatives admitted that they do not object to a longer period. (*See* Tr. 215:23-216:9 (Trustee stating that it does not "ha[ve] a preference" on timing, which could even be "90 days"); Tr. 260:2-4 (Finkel).) The only reason that Defendants persist in arguing for a 21-day notice period is because they are following MBIA's instructions to get the sale "done as quickly as possible." (Tr. 84:2 (McKiernan).)[6] It is therefore the very height of fiduciary breach for the Trustee now to join MBIA in arguing that no period longer than 21 days would work here.

---

[5] Defendants rely on inapposite cases in contending there is a "well-established body of law permitting the transfer of contingent rights … that either are subject to dispute or not specifically identifiable, including litigation claims." Def. Br. at 7, *citing Sun Prods. Corp. v. Bruch*, 507 F. App'x 46, 47 (2d Cir. 2013) (finding that the agreement there "clearly convey[ed] 'rights of recovery, rights of set-off, rights of compensation, Claims and causes of action,'" and "there [was] no genuine issue about [plaintiff's] ownership of the rights"). Here, far from "clearly conveying" the equity of the portfolio companies to the Zohar Fund, the Indenture expressly prohibits it. Accordingly, here there can be no "catch all" or attempt to sell "Other Collateral" that the Fund does not and cannot own by the Indenture's plain terms.

[6] Citing a portion of Plaintiffs' initial Complaint, Defendants claim that the "parties to this litigation agree that Section 5.13 permits MBIA to direct the 'time, method and place' of any auction." Def. Br. at 14. That is not the case. Plaintiffs did not intend by their initial pleading to proffer a definitive conclusion on "what the contract means" (Tr. 132:2), which is a legal question for the Court to determine. To correct the misimpression Defendants' counsel are trying to create, Plaintiffs have filed a First Amended Complaint (ECF Doc. No. 65), in which they have amended, *inter alia*, paragraphs 33, 58(e), 93, 96, and 102. Of course, Plaintiffs' initial pleading could not have bound Plaintiffs to any particular reading of the Indenture. *See, e.g.*, *Robinson v Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015); *Wheeler v Citizens Telecom. Co. of N.Y.*, 18 A.D.3d 1002, 1005 (3rd Dep't 2005). In any case, MBIA breached the Indenture by directing the Trustee to conduct a sale on terms that are unlawful and commercially unreasonable. *See* PX §§ 5.4, 5.13.

Dated: New York, New York
October 17, 2016

Respectfully submitted,
GIBSON, DUNN & CRUTCHER LLP

By:   /s/ Randy M. Mastro
　　　Randy M. Mastro
　　　Mark A. Kirsch
　　　Robert F. Serio

200 Park Avenue
New York, New York 10166
Tel: (212) 351-4000

*Attorneys for Plaintiffs*