UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATRIARCH PARTNERS XV, LLC and
OCTALUNA LLC,

                              Plaintiffs,

-against-

U.S. BANK NATIONAL ASSOCIATION and
MBIA INSURANCE CORPORATION,

                              Defendants.

Case No. 1:16-cv-07128 (JSR)

---

**DEFENDANTS U.S. BANK NATIONAL ASSOCIATION'S
AND MBIA INSURANCE CORPORATION'S JOINT POST-HEARING
REBUTTAL BRIEF IN OPPOSITION TO PLAINTIFFS' APPLICATION
BY ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING
<u>ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY</u>**

Defendants MBIA and U.S. Bank respectfully submit this joint memorandum of law in further opposition to Plaintiffs' preliminary injunction motion. Only two aspects of the modified auction remain in dispute: (1) the notice period for the auction and (2) the Trustee's ability to liquidate all of Zohar I's Collateral. Plaintiffs devote nearly all of their post-hearing brief to distractions: allegations of conspiracies and ulterior motives relating to aspects of the auction no longer at issue. Setting aside these distractions, Plaintiffs cannot establish their entitlement to an injunction based on these two issues.[1]

## I. THE AUCTION IS COMMERCIALLY REASONABLE

Plaintiffs ignore the facts that the Indenture provides MBIA with the express right to direct the Trustee to sell ***all of Zohar I's Collateral*** (DX 10 at 99-100, 104-05), and gives the Trustee no discretion to disregard MBIA's reasonable directive. As Defendants demonstrated in their post-hearing brief, liquidating the remainder of Zohar I through Item 133 is permitted by law and is commercially reasonable. Plaintiffs do not and cannot point to any record evidence or other authority to support their position that the sale of intangible or contingent assets is not commercially reasonable. Plaintiffs rely solely on their experts' testimony, but that testimony does not support Plaintiffs' argument. Pl. Mem. at 11. Messrs. Reohr and Schwarcz did *not* testify that selling Item 133 would be unreasonable or otherwise chill bidding, but testified only that bidders might need to consider and understand those assets. Hr'g Tr. at 145:4-14, 160:10-161:15. Lacking any evidence or authority that Item 133 is unreasonable, Plaintiffs argue that Item 133 purports to sell certain assets they allege are not Collateral. But Item 133 tracks the Indenture's definition of "Collateral" and the Granting Clauses, so Plaintiffs' argument is a non-sequitur. What is commercially unreasonable, however, is Plaintiffs' insistence that the Trustee can sell only specifically identified tangible assets, notwithstanding that the Indenture expressly

---

[1] Although Plaintiffs purport to expand the relief being sought (Pl. Mem. at 4), they should not be permitted to pursue any relief other than the injunction requested in their moving papers.

states that the Collateral consists of, among other things, general and payment intangibles, which includes litigation claims. Whether any particular type of asset is or is not Collateral has no bearing on whether Item 133 reasonably implements the Trustee's contractual mandate to sell all of Zohar I's Collateral. Having said that, however, Plaintiffs' argument that certain types of Collateral should be excluded is simply wrong.

First, Plaintiffs contend that Collateral does not include all Zohar I assets, including equity. Pl. Mem. at 11 (noting that the definition of Collateral "does not mention equity at all"). Plaintiffs' argument cannot be correct, however, because the *undisputed* list of 132 assets already includes 40 items of Collateral identified as "Equity Interests." DX 3 at 4-5. Their argument also ignores the fact that the Granting Clauses (which are part of the definition of Collateral because they set forth the property and rights intended to be subject to the Trustee's lien) include "any and all other property of any type or nature" and articulate a non-exhaustive yet extensive list of property, including "securities," "instruments," "investment property" and rights, title and interests that plainly include equity interests. DX 10 at 1-2. In any event, Collateral certainly includes the entitlement ("right") to receive only cash proceeds from the sale of the borrower entities, as Ms. Tilton described these "upside" interests in her testimony. *Id.* at 19; Hr'g Tr. at 3454:18-55:17, 66:24-68:3. Second, Plaintiffs argue that Section 7.8(a) prohibits Zohar I from acquiring any asset that could result in liability to Zohar I. Pl. Mem. at 11-12. Plaintiffs, however, cite only to Ms. Tilton's self-serving testimony—and not the Indenture—because nothing in Section 7.8(a) supports Plaintiffs' argument. DX 10 at 123-25. Third, Plaintiffs wrongly contend that Defendants' reading of the definition of Collateral cannot be reconciled with Section 12.1(a). Section 12.1(a), however, does not address whether equity ownership or equivalent interests are subject to the lien, but only the type of assets that may qualify as "Collateralized Debt Obligations." DX 10 at 191-97. Notably, "Collateralized Debt Obligations"—a defined term itself—are just *one* of some two dozen examples of property

identified in the Granting Clauses as being property subject to the lien.[2]  Further, Ms. Tilton testified that she "gifted" or contributed to Zohar I what she referred to as "upside equity interests," whereas Sections 7.8 and 12.1 limit what kinds of assets may be **_purchased_** for Zohar I using the proceeds raised by the sale of the Zohar I notes, and does not limit what assets Zohar I may receive as gifts or contributions.  DX 10 at 123-25, 191-97.[3]  In any event, any theoretical covenant violation does not change the legal status of the Collateral assets as property owned by Zohar I but simply gives rise to a potential claims for breach of duty against the former Collateral Manager (Plaintiffs' own Patriarch affiliate), which was responsible for ensuring compliance with the Indenture's covenants.[4]

Plaintiffs also do not satisfy their burden to demonstrate that the Trustee's proposed 21-day notice period—in addition to the 17-days' notice already provided—is commercially unreasonable.  Defendants established that this notice period exceeds the amount of time required under the UCC and the Indenture and is consistent with industry custom.  Def. Mem. at 11-12; Hr'g Tr. at 308:8-10.  The testimony of Plaintiffs' experts that additional notice is necessary to review materials concerning the Collateral is not credible because they did not even review the available information in the data room concerning the Collateral.  Hr'g Tr. at 146:19-20, 183:21-24 (Messrs. Reohr and Schwarcz did not access the data room).  In any event, Plaintiffs should not be permitted to expand the notice period beyond 60 days past the lifting of

---

[2]  "Equity Security" likewise is a defined term that also is just one example of property that is identified in the Granting Clauses as Collateral subject to the lien.  DX 10 at 1-2, 27-28.

[3]  Plaintiffs failed to introduce any documentation evidencing the terms of these "upside equity interests." There is only Ms. Tilton's self-serving descriptions in the record and no reliable evidence that these interests are not Collateral.  Hr'g Tr. at 56:3-57:22.

[4]  Plaintiffs also erroneously rely on *MBIA Ins. Corp v. Cooperatieve Centrale Raiffeisen-Boerenleenbank BA*, 2011 WL 1197634 (S.D.N.Y. Mar. 25, 2011) ("*Rabobank*").  Unlike the Indenture Granting Clauses here, which expressly references all property of any type or nature, including instruments, securities and general and payment intangibles, the *Rabobank* indenture identified only specific types of assets relevant to that transaction yet "clearly omit[ted]" the only asset class at issue in that case.  *Id.* at *8.

3

the TRO, the period they represented would be appropriate.

## II. THE TRUSTEE HAS NOT BREACHED ITS DUTIES

Plaintiffs feign surprise at learning of the liquidation-related interactions between MBIA, the Trustee and Duff & Phelps.  As Plaintiffs well know, however, what they disingenuously characterize as "collusion" between MBIA and the Trustee is nothing more than those parties implementing and adhering to the Indenture terms that were drafted under Ms. Tilton's close oversight.  Following an Event of Default, these terms require that the Trustee follow MBIA's directions, including specific steps in furtherance of pursuing remedies on its behalf.  *See* DX 10 §§ 5.4(a), 5.13, 5.17, 6.1(b) & 16.7.  The Trustee's acceptance of MBIA's directions was not only appropriate, it was *required* by the express terms of the Indenture.  *Id.*; *see also* Def. Mem. at 13-15.  It is also clear that, upon the triggering of the post-default prudent person standard, the Trustee must still exercise and honor the Indenture's terms.  *See Beck v. Mfrs. Hanover Tr. Co.*, 632 N.Y.S.2d 520, 528 (App. Div. 1st Dep't 1995).  The Trustee was thus required to effect to MBIA's express direction rights so long as it ensured a commercially reasonable auction—which is precisely what the Trustee has done.

Looking past Plaintiffs' rhetoric and hyperbole, there is simply no substance to support their allegations that the Trustee failed to plan a commercially reasonable auction.  Plaintiffs' criticism that it was inappropriate for the Trustee to "launch[] the sale process entirely at the behest of MBIA" (Pl. Mem. at 15) is nothing short of Orwellian: Section 5.4(a) states that the Trustee "*shall*, upon direction by [MBIA] . . . sell . . . the Collateral . . .";  Section 5.13 allows MBIA to direct the "time, method and place" of an auction; and Section 16.7 requires the Trustee to "cooperate in all respects with any reasonable request" from MBIA, which includes a right, post-Event of Default, to direct the Trustee to take "*any appropriate action*" in furtherance of the exercise of any remedies.  *See* DX 10 §§ 5.4(a), 5.13, 16.7 (emphasis added).  Plaintiffs' attack that the auction contains "numerous commercially unreasonable terms" (Pl. Mem. at 15) ignores

4

that the structure of the modified auction now accommodates Plaintiffs' criticisms of both the all-or-none and QIB bid limitations, leaving unresolved only their meritless criticism of the inclusion of Item 133.

Plaintiffs' attack on the Trustee's notice and timing decisions is telling. While trumpeting the evidence that MBIA was interested in scheduling an early auction and setting a 10-day or shorter notice period, nowhere do they acknowledge that the Trustee ultimately determined to set the auction on a *later* date and with a *longer* notice period than MBIA wanted. The record evidence thus demonstrates that the Trustee took affirmative steps *on its own* to ensure a commercially reasonable auction. *See* Hr'g Tr. at 209:2-11 (DeRoss testifying that "[t]he trustee picked the date . . . [after] we consulted with [our] attorney, we consulted with the liquidation agent[] . . .").

### III.   PLAINTIFFS HAVE NOT DEMONSTRATED IRREPARABLE INJURY OR THAT EQUITIES FAVOR AN INJUNCTION

Plaintiffs maintain they will be harmed if any rights in the Collateral they claim to have are deemed to belong to Zohar I; however, they cite no evidence of injury, irreparable or otherwise, that would result from proceeding with a sale 21 days from lifting the TRO or from the use of Item 133 to liquidate all of Zohar I. By definition, Item 133 consists solely of Collateral not otherwise identified in Items 1 to 132—no more and no less. In the event there is a dispute between Ms. Tilton and the purchaser of rights contemplated by Item 133, Plaintiffs will suffer no cognizable harm from the judicial resolution of any such dispute. Plaintiffs' "last look" right also protects them against any injury by allowing Plaintiffs to capture any discounted value in the Collateral that they believe is not recognized by the bidding process for the auction.[5]

---

[5]   In claiming that the Trustee failed to disclose its books and records, Plaintiffs flagrantly distorted Mr. DeRoss's testimony. *See* Pl. Mem. 18. Mr. DeRoss testified that the Trustee *already* has provided Plaintiffs all transaction and balance information for the Zohar I accounts. Hr'g Tr. at 218:2-10. Further, the Trustee *already* has disclosed all Collateral-related information in its possession by producing the contents of the data room in this litigation. The Plaintiffs and Trustee are working to resolve the limited remaining books and records issues.

## CONCLUSION

For all the foregoing reasons, and those set forth in Defendants' post-hearing brief, the Court should deny Plaintiffs' motion for a preliminary injunction in its entirety.

Dated:   New York, New York
         October 17, 2016

| CADWALADER, WICKERSHAM & TAFT LLP | ALSTON & BIRD LLP |
|---|---|
| /s/ Jonathan M. Hoff | /s/ Michael E. Johnson |
| Jonathan M. Hoff | Michael E. Johnson |
| Joshua P. Arnold | Alexander S. Lorenzo |
| 200 Liberty Street | 90 Park Avenue |
| New York, NY 10281 | New York, NY 10016 |
| (212) 504-6000 | (212) 210-9400 |
| *Attorneys for Defendant MBIA Insurance Corporation* | *Attorneys for Defendant U.S. Bank National Association, solely in its capacity as Trustee for Zohar CDO 2003-1, Limited* |